642 F.2d 721
 UNION INSURANCE SOCIETY OF CANTON, LIMITED, Appellant,
v.
S.S. ELIKON, her engines, boilers etc., in rem and Deutsche
Dampfschiffahrts-Gesellschaft, "Hansa", in
personam, Appellees.
 No. 80-1343.
 United States Court of Appeals,
Fourth Circuit.
 
 Richard I. Gulick, Norfolk, Va. (Frances S. Gerwin, Gulick & Maynard, Norfolk, Va., on brief), for appellant.
 Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellees.
 Before WINTER, SPROUSE and ERVIN, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Union Insurance Society of Canton, Ltd., a marine insurer incorporated under the law of a country other than the United States, brings this suit as subrogee to recover damages to cargo it insured carried by the S/S Elikon from the United States to Kuwait. On the basis of a forum selection clause in the bill of lading requiring litigation of the suit in a German court, the district court dismissed the suit for want of jurisdiction. The Society appeals. We reverse, remanding the case for further proceedings in the district court.
 
 I.
 
 2
 This case arose out of a contract to sell American-manufactured air conditioners to a customer in the Middle East. The General Electric Company delivered 2100 cartons of its window-type air conditioners manufactured at its Louisville, Kentucky, plant to the S/S Elikon, a German freighter owned by Deutsche Dampfschiffahrts-Gesellschaft (Hansa), for shipment from Newport News, Virginia, to the Port of Kuwait on the Persian (Arabian) Gulf. Representatives of Hansa executed and delivered two clean bills of lading for the cargo to General Electric. On delivery in Kuwait, the cargo was damaged. The Society, as marine insurer, paid a substantial claim to the Middle Eastern consignee of the cargo, and it sues Hansa to recover its loss.
 
 
 3
 The bills of lading were preprinted forms supplied by Hansa. Clause 1 provided that the bill was subject to the provisions of the Carriage of Goods by Sea Act (COGSA). Clause 20, however, provided that the laws of the Federal Republic of Germany would apply to actions on the bill, and that such actions were to be brought exclusively in the Court of Bremen in West Germany.[1]
 
 
 4
 Notwithstanding forum selection clause 20, but pursuant to COGSA, 46 U.S.C. §§ 1300 et seq. (1976), the Society brought this action in admiralty in the United States District Court for the Eastern District of Virginia, the forum in which the cargo and the bills of lading were exchanged for the shipment from the United States to Kuwait. Hansa challenged the jurisdiction of the district court, asserting that the forum selection clause should control. The district court agreed. Relying upon the authority of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), it ruled that the forum selection clause validly precluded litigation of the case in the Eastern District of Virginia so long as the Society could maintain its action in the German court. The district court added that the fact both parties were foreigners supported its refusal to accept jurisdiction.
 
 II.
 
 5
 In our opinion, the district court accorded insufficient weight to the application of COGSA in reaching its determination. COGSA reflects explicit congressional concerns about bills of lading in foreign trade. In view of those concerns, the forum selection clause in Hansa's bills of lading cannot alone preclude the district court from entertaining jurisdiction of this case.
 
 
 6
 The bills of lading that are the subject of this litigation are undisputedly governed by COGSA. The statute provides that "(e)very bill of lading ... which is evidence of a contract for the carriage of goods by sea to or from the ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter." 46 U.S.C. § 1300. Hansa's bills of lading represented a contract for shipping the air conditioners from Newport News to Kuwait, a transaction unambiguously within the terms of the statute. See id. § 1312. Clause 1 of the bills themselves recites the application and indeed the incorporation by reference of COGSA.
 
 
 7
 The statute essentially represents the American enactment of the Hague Rules, developed at a series of international maritime conferences in the 1920s. COGSA is thus part of an international effort to achieve uniformity and simplification of bills of lading used in international trade. It was intended to reduce uncertainty concerning the responsibilities and liabilities of carriers, the responsibilities and rights of shippers and the liabilities of underwriters who insure waterborne cargo. By strictly circumscribing the ability of carriers to avoid liability on cargoes in their care, COGSA also greatly enhances the negotiability of bills of lading. Subsequent holders of a bill subject to COGSA can give value for it in confidence that they can ultimately obtain satisfaction thereon without elaborately investigating the circumstances of the shipment. See Uniform Ocean Bills of Lading Hague Rules, H.R.Rep. No. 2218, 74th Cong., 2d Sess. (1936).
 
 
 8
 It is against this statutory background that the Court of Appeals for the Second Circuit invalidated the forum selection clause of a bill of lading in Indussa Corp. v. S/S Ranborg, 377 F.2d 200 (1967) (in banc). In that case, a Norwegian carrier's bill of lading required suit to be brought in Norway for damages to a cargo shipped from Antwerp to San Francisco. The court reversed a denial of jurisdiction by the District Court for the Southern District of New York, holding that:
 
 
 9
 Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed.
 
 
 10
 Id. at 204. The Court of Appeals relied upon the "paramountcy" of COGSA, expressed in 46 U.S.C. § 1312, over contracts for the carriage of goods in foreign trade to or from the ports of the United States, and upon § 3(8) of COGSA, 46 U.S.C. § 1303(8), which provides in part that "any clause ... in a contract of carriage relieving the carrier or the ship from liability ... arising from negligence ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."[2] The court interpreted this prohibition to include forum selection clauses within its ambit, stating:
 
 
 11
 A clause making a claim triable only in a foreign court would almost certainly lessen liability if the law which the court would apply was neither the Carriage of Goods by Sea Act nor the Hague Rules. Even when the foreign court would apply one or the other of these regimes, requiring trial abroad might lessen the carrier's liability since there could be no assurance that it would apply them in the same way as would an American tribunal subject to the uniform control of the Supreme Court, and § 3(8) can well be read as covering a potential and not simply a demonstrable lessening of liability.
 
 
 12
 377 F.2d at 203-04. The court thus implicitly recognized that enforcement of foreign forum selection clauses could lead to the recrudescence of bills of lading that would effectively frustrate shippers' ability to recover damages from negligent carriers.
 
 
 13
 The district court suggested that the Supreme Court's decision in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), superseded the authority of Indussa. We think that the circumstances of The Bremen distinguish it from Indussa and this case. The Bremen concerned a contract for towing a mobile offshore drilling rig from Texas to Italy. Unlike the preprinted form bills of lading here, the rig owner solicited bids from towing companies and negotiated the contract terms with the eventual winner, the Bremen's German owner. The Court noted the testimony that the forum selection clause designating the London courts for dispute resolution represented a compromise between the American rig owner and the German tug operator. A storm in the Gulf of Mexico damaged the rig, and its owner sued the Bremen and her owner in district court in Tampa. The Supreme Court upheld the London forum selection clause because of the bargained nature of the contract, the reasonableness of the forum selected and the general policy encouraging private contractual choice for dispute resolution, particularly in the context of international trade. The Court specifically distinguished Indussa, noting the nonapplicability of COGSA to the towage contract before it. 407 U.S. at 10 n.11, 92 S.Ct. at 1913 n.11.[3]
 
 
 14
 While The Bremen holds that forum selection clauses are presumptively valid, particularly in international transactions, it only expressed this view in the absence of any congressional policy on the subject, much less a contrary congressional policy. COGSA applies to Hansa's bills of lading in this case, but those bills clash with the statute on their face by their provision for German law in Clause 20. The terms of the bill were not agreed to through hard bargaining, but rather represent the form clauses of an adhesion contract. See 6A A. Corbin, Contracts § 1376, pp. 21-22, n.17 (1962). Congress intended COGSA to ameliorate this very difficulty of bills of lading with one-sided form provisions. While the Court of Bremen is not an unreasonable forum on its face, it becomes more suspect in view of Hansa's headquarters in Bremen. Against this array of negative circumstances, Hansa can only argue that forum selection clauses are generally to be upheld. We think the general policy here must recede before the specific policy enunciated by Congress through COGSA.[4] The district court erred in declining jurisdiction in this case solely on the basis of the foreign forum selection clause in the bills of lading.
 
 III.
 
 15
 COGSA nonetheless does not explicitly require the district court to hear the case. The Court of Appeals for the Second Circuit in Indussa specifically left open the question of the application of the principles of forum non conveniens to suits on COGSA bills of lading. 377 F.2d at 204. More recently, it has ruled that these principles, in the familiar formulation of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), apply in admiralty litigation generally. Alcoa Steamship Co. v. M/V Nordic Regent, 453 F.Supp. 10 (S.D.N.Y.1978), aff'd, 636 F.2d 860 (2 Cir. 1980) (unpublished) (in banc), cert. denied, --- U.S. ----, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Moreover, the parties to this litigation are foreign nationals. The Supreme Court has recognized the discretion of the district courts to decline jurisdiction in admiralty cases between foreigners. Canada Malting Co. v. Patterson Steamships, Ltd., 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932). Justice Brandeis' opinion for the Court noted the principles of forum non conveniens, id. at 423 n.6, 52 S.Ct. at 415, and later decisions have explicitly adopted those principles as the doctrine to guide the district court's exercise of discretion in such cases. See, e. g., Philippine Packing Corp. v. Maritime Co. of the Philippines, 519 F.2d 811 (9 Cir. 1975).
 
 
 16
 The district court did not apply forum non conveniens principles in considering this case, choosing to rely on The Bremen and merely noting the foreign nationality of the parties as an argument a fortiori in support of its declination of jurisdiction. Because the foreign nationality of the parties alone does not support denial of admiralty jurisdiction, The Belgenland v. Jensen, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885), Gkiafis v. Steamship Yiosonas, 387 F.2d 460 (4 Cir. 1967), the district court on remand should develop the additional facts necessary to ascertain whether the Eastern District of Virginia is a forum non conveniens for this litigation.
 
 
 17
 We, of course, do not decide the forum non conveniens issue which we remand to the district court. The considerations which go into decision of such an issue are canvassed in Gulf Oil Corp. v. Gilbert, supra. For the guidance of the district court, we merely identify some of the factors apparent to us which should be considered. Being alerted to these considerations, counsel and the district court may develop them more fully as well as to present others which may not now be apparent on the present record. Although as we have said, the parties at this stage of the litigation are both foreign nationals, COGSA not only invalidates a forum selection clause appointing a foreign tribunal and designating the application of foreign law, but appears to suggest a preference for an American forum. The fact that the case is to be decided under American law and that the bill of lading is written in English is another factor in the overall equation. Finally, it appears that Hansa's defense may be that General Electric's packaging of the air conditioners was inadequate for the ocean voyage. Whether that is the defense, and, if so, the identity, whereabouts and availability of the witnesses having knowledge of the facts are matters which should be developed before the district court on remand.
 
 
 18
 REVERSED AND REMANDED.
 
 
 
 [1]
 The text of the two clauses follows:
 
 
 [1]
 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the Carrier. The Carrier shall not be liable in any capacity whatsoever for any delay, nondelivery or misdelivery, or loss or damage to the goods occurring while the goods are not in the actual custody of the Carrier
 
 
 [20]
 All actions under this contract shall be brought before the Court of Bremen, Federal Republic of Germany and the laws of the Federal Republic of Germany shall apply. No other Court shall have jurisdiction with regard to any such action unless the carrier appeals to another jurisdiction or voluntarily submits himself thereto
 
 
 [2]
 The court also found support in the Supreme Court's interpretation of the predecessor law to COGSA, the Harter Act, 46 U.S.C. §§ 190-96 (1976). In a case involving a British carrier, the Court held that § 1 of the Act, 46 U.S.C. § 190, a provision similar to COGSA § 3(8), "overrides and nullifies the stipulations of the bill of lading that the carrier shall be exempt from liability for such negligence, and that the contract shall be governed by the law of the ship's flag." Knott v. Botany Worsted Mills, 179 U.S. 69, 77, 21 S.Ct. 30, 33, 45 L.Ed. 90 (1900). While somewhat distinguishable from Indussa, because the Norwegian carrier's bill merely provided for suit in a Norwegian court without specifying Norwegian law, Knott is more in point with this case, because Hansa's bills specified that "the laws of the Federal Republic of Germany shall apply," the laws, incidentally, of the Elikon's "flag."
 
 
 [3]
 The inapplicability of COGSA apparently was not contested in the Supreme Court or in the litigation before the lower courts. Two reasons suggest themselves as to why COGSA did not apply: (1) there was no bill of lading, and (2) a mobile offshore drilling rig is not a "good" while being towed. See 46 U.S.C. § 1301(b), (c)
 
 
 [4]
 Hansa cites Fireman's Fund Ins. Co. v. Puerto Rican Forwarding Co., 492 F.2d 1294 (1 Cir. 1974), and Roach v. Hapag-Lloyd, A.G., 358 F.Supp. 481 (N.D.Calif.1973), as decisions upholding forum selection clauses in the face of COGSA. While it is true that both courts raise questions about Indussa's validity in light of The Bremen, neither case is in point here. The court in Puerto Rican Forwarding carefully emphasized that the forum selection clause there designated a specific American forum, thus effectuating the congressional purpose in COGSA. 492 F.2d at 1296. In Roach, the suit was not for damages to the cargo, but rather a third-party complaint for indemnification for injuries to a longshoreman, the clause protected the shipper, not the carrier, and the dispute was between two German litigants, rendering a Hamburg forum reasonable. 358 F.Supp. at 484. See also Zima Corp. v. M/V Roman Pazinski, 493 F.Supp. 268, 276 nn.13-14 (S.D.N.Y.1980). Indeed, a subsequent Northern District of California case, Northern Assurance Co., v. M/V Caspian Career, 1977 A.M.C. 421, 424-25, invalidated a foreign forum selection clause because of the operation of COGSA. Accord, Pacific Lumber & Shipping Co. v. Star Shipping A/S, 464 F.Supp. 1314 (W.D.Wash.1979); Mitsui & Co. v. M/V Glory River, 464 F.Supp. 1004 (W.D.Wash.1978); M. G. Chemical Corp. v. M/V Sun Castor, 1978 A.M.C. 1756 (D.Alas.1977). See generally G. Gilmore & C. Black, The Law of Admiralty, 145-46 n.23 (2d ed. 1975). At worst, the case law developed since The Bremen is simply inconclusive on this point. COGSA should continue to serve as a basis for the jurisdiction of the district court over this case