**UNDERWRITERS AT LLOYD'S OF LONDON, Plaintiff,**

v.

**The M/V "STEIR", her engines, boilers, tackle, apparel, etc., In Rem, and COMPAGNIE BRETONNE DE CARGOS FRIGORIFIQUES, ("COBRECAF"), In Personam, Defendants.**

Civ. No. 90–1865 (JAF).

United States District Court,
D. Puerto Rico.

Aug. 29, 1991.

---

**524**

José E. Alfaro–Delgado, Calvesbert & Brown, San Juan, P.R., for plaintiff.

J. Ramón Rivera–Morales, Jimenez Graffam & Lausell, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

The consignee's insurers, plaintiffs Underwriters at Lloyd's of London ("Underwriters" or "insurers"), filed this action *in rem* against defendant vessel THE M/V STEIR and *in personam* against defendant Compagnie Bretonne de Cargos Frigorifiques ("COBRECAF"), a French maritime carrier. Plaintiffs seek a decree for cargo damage due to the alleged negligence of defendant carrier and the unseaworthiness of the vessel.

Before the court is defendant COBRECAF's motion to dismiss inviting this court, based on recent United States Supreme Court precedent, to give effect to the forum selection clause found in the cargo's bill of lading and to refer the case to the Commercial Court of Quimper, France for resolution.[1] For the reasons stated below, we decline to accept defendant's invitation and deny the motion.

### I.

#### *Facts*

The underlying facts of this case are straightforward and are not in dispute.

Defendant COBRECAF is a corporation organized under the laws of France, who was the vessel's charterer at the time the alleged incident occurred. The vessel is a common carrier engaged in the carriage of fish.

In June 1989, in the port of Cumaná, Venezuela, defendants received over five-hundred short tons of yellowfin and skip jack tuna from another vessel for shipment to Mayaguez, Puerto Rico, where it would be delivered to plaintiffs' insured, Starkist Caribe, Inc. ("Starkist").

The bill of lading, dated June 13, 1989, under which the cargo was shipped, had the following relevant language as to forum selection:

**RULE 11. Barring By Limitation and Jurisdiction**

\* \* \* \* \* \*

Notwithstanding article 54 of the decree of December 31, 1966, any disputes or difficulties which may arise with respect to the interpretation or the carrying out of this agreement shall be referred, even in the event of a call on guarantors or of the plurality of defenders to the Commercial Court of QUIMPER.

The parties agree that the forum selection clause is standard language found in all of COBRECAF's bills of lading.

Upon arrival in Mayaguez, it was determined that a portion of the cargo was damaged. Starkist claimed against plaintiffs insurance underwriters and was paid $82,639.44. Subrogation ensued. It is this amount which plaintiffs seek from the defendant carrier.

### II.

#### *Discussion*

Defendant's argument as to why this court should enforce the forum selection clause found in the bill of lading is based on its interpretation of a recent United States Supreme Court case, *Carnival*

---

1. The petition represents a recurring fantasy of shipowners and cargo defense lawyers. Ideally, if a choice of forum clause in a bill of lading would name the place for the resolution of the controversy, for example, Timbuktu or Byelorussia, then the expense and discomfort of pursuing the matter there would, of course, affect the exercise of the rights of the otherwise innocent cargo owner. Certain claims, because of the amount involved or other considerations regarding evidence and witnesses would not be pursued. These days, an $82,639.44 claim like the present one could not be pursued in an economically-feasible manner in France under the circumstances related here. That much would be spent in attorney's fees, witness fees, and travel expenses.

*Cruise Lines, Inc. v. Shute,* —— U.S. ——, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Defendant opines that the Court in Carnival reaffirmed its position enunciated in *M/S Bremen v. Zapata Off-Shore Company,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that forum selection clauses should normally be given effect except in cases where the clauses are "unreasonable". COBRECAF also argues that, since the Court in *Carnival* refused to find that the forum selection clause violated the Limitation of Liability Act, as amended, 46 U.S.C.App. § 183c, and this statute is analogous to section 3(8) of the Carriage of Goods by Sea Act, 46 U.S.C.App. § 1303(8) [2] ("COGSA"), much of the rationale for earlier decisions denying enforcement of forum selection clauses requiring suit in foreign jurisdictions has been eroded. Therefore, defendant invites this court to heed the call of Chief Justice Burger in *M/S Bremen* to accept modern-day commercial realities and give effect to the forum selection clause in the bill of lading before us, decisions to the contrary notwithstanding. While we find that such general argument can be made, given the facts of this case we decline to "shed the historical provincial attitude" and will not enforce the forum selection clause. Counsel in this case are all aware of the fact that the *Bremen–Zapata* rationale enforced a forum selection clause negotiated by parties of equal bargaining power. Counsel in this case are aware that such is not the case in bill of lading forum clauses. Insertion of the clause in a bill of lading is the result of a unilateral decision on the part of the carrier. They are equally aware that the proposal, in the context of maritime contracts for transportation of cargo under a bill of lading, is a dangerous proposition that ultimately will affect the balance of remedy availability that both international law and Congress have attained. Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1312.[3]

As both parties agree, the seminal case on this point is *Indussa Corporation v. S.S. Ranborg,* 377 F.2d 200 (2d Cir. (1967)) (en banc). In *Indussa,* the court overruled an earlier decision, *Wm. H. Muller & Co. v. Swedish American Line, Ltd.,* 224 F.2d 806 (2d Cir.), *cert. denied,* 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), and held that forum-selection clauses in bills of lading requiring suit in foreign jurisdictions are invalid under section 3(8) of COGSA. The court reasoned that the "lessening liability" language of the statute would almost assuredly occur where an American plaintiff was forced to litigate an action in a foreign judicial forum.

> From a practical standpoint, to require an American plaintiff to assert his claim only in a distant court lessens the liability of the carrier quite substantially, particularly when the claim is small. Such a clause puts "a high hurdle" in the way of enforcing liability, [citation omitted], and thus is an effective means for carriers to secure settlements lower than if cargo could sue in a convenient forum.

*Indussa,* 377 F.2d at 203. The court went on to discuss both "certain" and "potential" lessening of liability and found that

> Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed.

*Id.* at 204.

After *Indussa,* the Supreme Court decided the *M/S Bremen* case and upheld a

---

**2.** Section 3(8) of COGSA provides:

Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect....

46 U.S.C.App. § 1303(8).

**3.** *See* International Convention for the Unification of Certain Rules Relating to Ocean Bills of Lading, The Hague, 1924. France has adopted national legislation similar to the U.S. Carriage of Goods by Sea Act. *See* Knauth, *Ocean Bills of Lading* (1953).

forum-selection clause found in an international towage contract signed by two parties of equal bargaining power. The Court adopted the position "that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913. The Court reasoned that, where the "choice of forum was made in an arm's length negotiation by experienced and sophisticated businessmen," the clause should be honored and enforced absent some compelling and countervailing reason. *Id.* at 12, 92 S.Ct. at 1914. The Court then outlined the compelling reasons why the clause should be given effect in the particular circumstances of this case. First, the contract in question did not involve a routine transaction, but rather dealt with the towing of an expensive piece of equipment from the Gulf of Mexico to the Adriatic Sea. The Court reasoned that the parties, in the contract, contemplated a "neutral forum" for the resolution of any disputes that might arise, given that the tow would traverse so many jurisdictions. *Id.* at 13, 92 S.Ct. at 1915. The Court, in a footnote, acknowledged the *Indussa* decision and stated that the applicable provision of COGSA was not applicable to a towage case. *Id.* at 11 n. 11, 92 S.Ct. at 1913 n. 11.

After *M/S Bremen*, the rule established in *Indussa* has continued to be followed by courts. *See Hughes Drilling Fluids v. M/V Luo Fu Shan*, 852 F.2d 840 (5th Cir. 1988), *cert. denied*, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989); *Union Ins. Soc. v. S.S. Elikon*, 642 F.2d 721, 724–25 (4th Cir.1981); *C.A. Seguros Orinoco v. Naviera Transpapel, C.A.*, 677 F.Supp. 675 (D.P.R.1988). In *Union Ins. Soc.*, the

Fourth Circuit distinguished *Indussa* and its own case from *M/S Bremen*. The court reasoned that the holding of the latter case, that forum selection clauses are presumptively valid, is a valid expression only in the absence of any Congressional policy on the subject. *Union Ins. Soc.*, 642 F.2d at 724. The court noted that where the terms of the bill of lading are not the result of hard bargaining by the parties but rather represent form clauses of adhesion contracts, the specific policy of COGSA, to ameliorate this type of one-sided bargaining, trumps the general policy of upholding forum selection clauses. *Id.* at 724–25.

It is in this context that we must examine the *Carnival* decision. In *Carnival*, the Court enforced the forum-selection clause found on the back of the cruise line's passage contract ticket purchased by plaintiff which required the suit to be brought in a court in the state of Florida (rather than the state of Washington where plaintiff resided and originally filed suit).[4] The Court extended the reasoning of *M/S Bremen* from "far from routine" transactions to a "purely routine and doubtless nearly identical to every commercial passage" contract. *Carnival*, 111 S.Ct. at 1527. The Court went on to analyze the reasonableness of the "routine" forum selection clause and found several permissible reasons for such a clause. *Id.*[5] As to the fact that the Court found no violation of the Limitation of Liability Act, 46 U.S.C.App. § 183c, the majority noted that the plain language of the forum selection clause in question does not take away a plaintiff's right to "a trial by a court of competent jurisdiction," since the courts of Florida were competent to decide the matter. *Id.* 111 S.Ct. at 1528.

---

**4.** Obviously Florida, as an alternate forum to Washington State, is less onerous than for example Puerto Rico versus some forum in France. Moreover, the Carriage of Goods by Sea Act does not apply to a passage contract. *See Fireman's Fund American Ins. Cos. v. Puerto Rican Forwarding Co., Inc.*, 492 F.2d 1294 (1st Cir.1974).

**5.** Among the reasons cited by the Court are: the nature of cruises which gather passengers from many locales and could, in the event of a mis-

hap, expose the cruise line to litigation in several fora; the dispelling of confusion as to where actions should be brought thus reducing the time and expense of litigation and conserving judicial resources in briefing and deciding such pretrial motions; and the fact that the savings the cruise line enjoys by limiting the fora in which it will be sued would result in lower cruise fares for all passengers. *Id.* 111 S.Ct. at 1527.

While the majority in *Carnival* made no reference to the issue before us, Justice Stevens, in his dissent, specifically referred to the problem of forum-selection clauses requiring suit in foreign jurisdictions. *Id.* 111 S.Ct. at 1532–33. Noting that both courts of appeals and commentators have been unanimous in construing COGSA to invalidate forum-selection clauses where the effect would be to deny access to *any* American forum, he noted that the facts in *Carnival* would arguably have less of an impact on plaintiff's ability to recover than where the litigant would be forced to bring the action in a foreign jurisdiction. *Id.* 111 S.Ct. at 1533.[6]

Having reviewed the relevant case law, our decision can only be against the enforcement of the bill of lading clause. Here, we are dealing with a forum-selection clause requiring litigation in a French court. The bill of lading is not a specially-negotiated transaction nor can the parties deny that section 3(8) of COGSA applies, 46 U.S.C.App. § 1303(8). Following the reasoning of *Indussa* and its progeny, we hold that the forum-selection clause seeking to require litigation in the courts of France is invalid in that it violates section 3(8) of COGSA, 46 U.S.C.App. § 1303(8), and, therefore, should be given no effect.

Here we note that the "lessening liability" rationale of *Indussa* is equally applicable here. We have before us a claim for around $86,000. In order to prove their case, plaintiffs will probably have to call witnesses from the mainland United States, Puerto Rico, and Venezuela. The cargo was consigned to Mayaguez, Puerto Rico. Obviously, the loss was established, investigated, documented, appraised, and paid in Puerto Rico. The added expense of having witnesses appear in France will almost assuredly be a litigation factor that plaintiffs will have to consider and could affect the settlement posture of this case in favor of the carrier. Unlike *M/S Bremen* and *Car-*

*nival*, where neither COGSA applied nor was the alternative judicial forum a non-American court, here we are faced with the same situation as that found by the courts in *Indussa* and its progeny who interpreted the language of section 3(8) as invalidating choice of forum clauses because they run afoul of Congressional intent. Under the facts of this case, we find that *Carnival* has not overruled or significantly diminished the underlying rationale for prior case law and, therefore, follow the rule of *Indussa.*

Accordingly, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

---

**6.** The dissenting opinion also cites a First Circuit case, *Fireman's Fund American Ins. Cos. v. Puerto Rican Forwarding Co., Inc.,* 492 F.2d 1294 (1st Cir.1974), where the court upheld a forum-selection clause in a bill of lading which chose any court in the City of New York to litigate the action, for the proposition that forum-selection clauses *choosing other American courts might have less of an impact* as to plaintiff's ability to recover, and therefore, might be more "reasonable" and subject to enforcement under the standards of *M/S Bremen.*