USCA1 Opinion

 

 July 18, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 93-2179 VIMAR SEGUROS Y REASEGUROS, S.A., Plaintiffs, Appellants, v. M/V SKY REEFER, HER ENGINES, ETC., AND M.H. MARITIMA, S.A., Defendants, Appellees. ____________ ERRATA SHEET The opinion of this court issued on July 7, 1994, is amended as follows: On page 8, first full paragraph, line 1: Replace "Moveover" with "Moreover." UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2179 VIMAR SEGUROS Y REASEGUROS, S.A., Plaintiffs, Appellants, v. M/V SKY REEFER, HER ENGINES, ETC., AND M.H. MARITIMA, S.A., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Breyer*, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Stanley McDermott, III with whom Sharyn Bernstein, Varet & Fink, _______________________ ________________ _____________ P.C., Alexander Peltz, and Peltz Walker & Dubinsky were on brief for ____ _______________ _______________________ appellants. John J. Finn with whom Thomas H. Walsh, Jr., Jeffrey S. King, and ____________ ____________________ _______________ Bingham, Dana & Gould were on brief for appellees. _____________________ ____________________ July 7, 1994 ____________________ ____________________ *Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). BOWNES, Senior Circuit Judge. This appeal asks us BOWNES, Senior Circuit Judge. ____________________ to decide whether a foreign arbitration clause in a maritime bill of lading governed by the Carriage of Goods at Sea Act, 46 U.S.C. 1300 et seq. (COGSA), is invalid under that __ ___ statute, or whether such a clause is enforceable under the Federal Arbitration Act, 9 U.S.C. 1 et seq. (FAA). We __ ___ conclude that the FAA controls, and that the arbitration clause is valid. Accordingly, the order of the district court staying this action pending arbitration in Tokyo is affirmed. I. I. BACKGROUND BACKGROUND __________ Plaintiff-appellant Bacchus Associates is a wholesale fruit distributor in the Northeast United States. Bacchus was the owner of a shipment of oranges travelling from Agadir, Morocco to New Bedford, Massachusetts, in February 1991 aboard the SKY REEFER,1 a vessel owned by M.H. Maritima, S.A. Maritima had time-chartered the vessel to Honma Senpaku Co., Ltd., who in turn time-chartered it to Nichiro Corp. Bacchus entered into a voyage charter with Nichiro for the February 1991 voyage. ____________________ 1. The subrogated underwriter of the oranges, Vimar Seguros Y Reaseguros, is also a plaintiff-appellant in this action. Hereafter, references to Bacchus include Vimar where applicable. -2- 2 The oranges were shipped under a bill of lading issued in Morocco by Nichiro. The bill of lading constitutes the contract of carriage between Bacchus and Maritima. En route to New Bedford, numerous boxes of oranges were crushed. Bacchus filed an action in the United States District Court for the District of Massachusetts, in rem against the SKY __ ___ REEFER, and in personam against Maritima, seeking to recover __ ________ approximately $1 million in damages. Maritima moved to stay the action and compel arbitration in Tokyo pursuant to a clause in the bill of lading: Governing Law and Arbitration Governing Law and Arbitration (1) The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese Law. (2) Any dispute arising from this Bill of Lading shall be referred to arbitration in Tokyo by the Tokyo Maritime Arbitration Commission (TOMAC) at the Japan Shipping Exchange, Inc., in accordance with the Rules of TOMAC and any agreement thereto, and the award given by the arbitrators shall be final and binding on both parties. The district court held that the arbitration clause contained in subsection (2) was enforceable, granted Maritima's motion for a stay pending arbitration, and certified the following question for interlocutory appeal pursuant to 28 U.S.C. 1292(b): "[W]hether 46 U.S.C. 1303(8) [ 3(8) of COGSA] nullifies an arbitration clause contained in a bill of lading -3- 3 governed by COGSA." With this question in mind, we begin our journey through unsettled statutory waters. II. II. DISCUSSION DISCUSSION __________ COGSA was passed in 1936 as the American enactment of the Hague Rules, and was part of an international effort to achieve uniformity and simplicity in bills of lading used in foreign trade. Union Ins. Soc'y of Canton, Ltd. v. S.S. _________________________________ ____ Elikon, 642 F.2d 721, 723 (4th Cir. 1981). COGSA was also ______ intended to reduce uncertainty concerning the responsibilities and liabilities of carriers, responsibilities and rights of shippers, and liabilities of insurers. State Establishment for Agric. Prod. Trading v. ______________________________________________ M/V Wesermunde, 838 F.2d 1576, 1580 (11th Cir.), cert. _______________ _____ denied, 488 U.S. 916 (1988) ("Wesermunde"); S.S. Elikon, 642 ______ __________ ___________ F.2d at 723; see generally Grant Gilmore & Charles L. Black, ___ _________ The Law of Admiralty 3-25 at 145 (2d ed. 1975). ____________________ COGSA applies to "[e]very bill of lading . . . which is evidence of a contract for the carriage of goods by sea to or from parts of the United States, in foreign trade . . . . " 46 U.S.C. 1300. The parties agree that the bill of lading at issue here is covered by COGSA ex proprio __ _______ vigore, in other words, as a matter of law. The bill of ______ lading also contains the following provision: -4- 4 Local Law Local Law In case this Bill of Lading covers the Goods moving to or from the U.S.A. and it shall be adjudged that the Japanese Law does not govern this Bill of Lading, then the provisions of the U.S. Carriage of Goods at Sea Act 1936 shall govern before the Goods are loaded on and after they are discharged from the vessel and throughout the entire time during which the Goods are in the actual custody of the carrier. Bacchus argues that the Tokyo arbitration clause is invalid under 3(8) of COGSA which prohibits the "lessening" of the carrier's obligation as imposed by COGSA's other sections.2 In Indussa Corp. v. S.S. Ranborg, 377 F.2d 200 (2d _____________ ____________ Cir. 1967) (en banc), the Second Circuit held that all foreign forum selection clauses in bills of lading governed by COGSA are necessarily invalid under 3(8) because they tend to lessen the carrier's liability. Id. at 204. The ___ court reasoned as follows: From a practical standpoint, to require an American plaintiff to assert his claim only in a distant court lessens the ____________________ 2. This provision provides as follows: Any clause, covenant or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties or obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect. 46 U.S.C. 1303(8). -5- 5 liability of the carrier quite substantially, particularly when the claim is small. Such a clause puts "a high hurdle" in the way of enforcing liability, and thus is an effective means for carriers to secure settlements lower than if cargo [sic] could sue in a convenient forum. Id. at 203.3 Moreover, "[a] clause making a claim triable ___ only in a foreign court would almost certainly lessen liability if the law which the court would apply was not [COGSA]." Id. Furthermore, ___ [e]ven when the foreign court would apply [COGSA], requiring trial abroad might _____ lessen the carrier's liability since there could be no assurance that it would apply [COGSA] in the same way as would an American tribunal subject to the uniform control of the Supreme Court . . . . We think that Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo [sic] able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed. ____________________ 3. The court also concluded that COGSA, wherever it governs a bill of lading, requires application of American law. Indussa, 377 F.2d at 203; see generally Thomas J. Schoenbaum, _______ ___ _________ Admiralty & Maritime Law 9-18 at 326-27 (Pra. ed. 1987). _________________________ Bacchus contends that the Japanese choice-of-law clause in its bill of lading, in addition to the arbitration clause, is null and void under 3(8) of COGSA, and, alternatively, that the "Local Law" clause in the bill of lading requires that COGSA, and not Japanese law, governs, because COGSA applies ex proprio vigore. Although both of these arguments appear __ _______ ______ to be substantial, only the validity of the arbitration clause is at issue on this interlocutory appeal. In light of our holding, the choice-of-law question must be decided, in the first instance, by an arbitrator. -6- 6 Id. at 203-04 (emphasis in original) (citations omitted) ___ (footnote omitted). Since Indussa, 3(8) has been consistently used by _______ federal courts to invalidate forum selection clauses in bills of lading governed by COGSA. See, e.g., Conklin & Garrett, ___ ____ ___________________ Ltd. v. M/V Finnrose, 826 F.2d 1441, 1442-44 (5th Cir. 1987) ____ ____________ (forum selection clause designating Finland invalid even where bill of lading provided for application of COGSA in Finland); Union Soc'y of Canton, Ltd., 642 F.2d at 723-25 _____________________________ (choice of forum clause requiring litigation in Germany invalid under 3(8)); cf. Fireman's Fund Amer. Ins. Cos. v. ___ ______________________________ Puerto Rican Forwarding Co., 492 F.2d 1294 (1st Cir. 1974) ____________________________ (distinguishing Indussa and upholding New York City forum _______ selection clause). Indussa has also been approved by _______ commentators. See Gilmore & Black, supra 3-25 at 145-46 ___ _____ n.23; Schoenbaum, supra 9-18 at 327; Charles L. Black, The _____ ___ Bremen, COGSA and the Problem of Conflicting Interpretation, ____________________________________________________________ 6 Vand. J. Trans. L. 365, 368-69 (1973). But see Note, ___ ___ Kenneth M. Klemm, Forum Selection in Maritime Bills of Lading ___________________________________________ Under COGSA, 12 Fordham Int'l L.J. 459 (1989); Stephen M. ___________ Denning, Choice of Forum Clauses in Bills of Lading, 2 J. _____________________________________________ Mar. L. & Com. 17 (Oct. 1970). While we need not fully explore the issue, we note that the Supreme Court's recent decision in Carnival Cruise _______________ Lines, Inc. v. Shute, 499 U.S. 585 (1991), in which the Court ___________ _____ -7- 7 held that the Limitation of Vessel Owners' Liability Act did not invalidate forum selection agreements, casts some doubt upon Indussa's continuing viability. See Fabrica De Tejidos _________ ___ __________________ La Bellota S.A. v. M/V Mar, 799 F. Supp. 546, 560-61 (D. ________________ _______ Virgin Islands 1992); see also Patrick J. Borchers, Forum ___ ____ _____ Selection Agreements in the Federal Courts After Carnival _____________________________________________________________ Cruise: A Proposal for Congressional Reform, 67 Wash. L. _______________________________________________ Rev. 55, 77 (1992) (Carnival Cruise implicitly overruled ________________ Indussa and its progeny). But see Underwriters at Lloyd's of _______ ___ ___ __________________________ London v. M/V Steir, 773 F. Supp. 523, 526-27 (D.P.R. 1991) ______ _________ (invalidating forum selection clause under 3(8) of COGSA, holding that Indussa survives Carnival Cruise). _______ _______________ Moreover, in Fireman's Fund we questioned whether _______________ Indussa even survived the Supreme Court's decision in The _______ ___ Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). In The ______ _____________________ ___ Bremen, the Supreme Court enforced a foreign forum selection ______ clause in a maritime contract not covered by COGSA. In doing so, the Court focused on whether the clause was "unreasonable" under the circumstances. The Bremen, 407 U.S. __________ at 10. We remarked as follows: Although the Supreme Court has acknowledged the Indussa decision and has _______ not formally rejected it, see The Bremen ___ __________ v. Zapata Off-Shore Co., 407 U.S. 1, 10 ____________________ n.11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), several passages in the Bremen opinion cast some doubt on the underlying rationale of Indussa. See, e.g., 407 _______ ___ ____ U.S. at 9, 92 S.Ct. at 1912 ("The expansion of American business and -8- 8 industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.") . . . . Fireman's Fund, 492 F.2d at 1296 n.2. Because The Bremen is ______________ ___________ not a COGSA case, however, it is easily distinguishable from Indussa and its progeny. See S.S. Elikon, 642 F.2d at 724-25 _______ ___ ___________ (holding that The Bremen did not involve COGSA and therefore ___________ did not disturb Indussa). _______ Notwithstanding the arguably tremulous ground on which Indussa and its progeny currently sit, we will assume, _______ arguendo, that, for the reasons set forth in Indussa, foreign ________ _______ forum selection clauses are invalid under 3(8) of COGSA. The other statute implicated in this case is the FAA. Section 2 of that act provides: A written provision in any maritime transaction . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. 2. "[B]ills of lading of water carriers" are explicitly included as "maritime transactions" under the statute. 9 U.S.C. 1. Furthermore, the FAA requires a federal district court, on the application of one of the parties, to stay litigation and grant an order compelling arbitration of any issue referable to arbitration under the agreement. Id. 3, 4. ___ -9- 9 Where there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration. Shearson/American _________________ Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987); ______________ _______ Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 _______________________ _____________________________ U.S. 614, 625 (1985); Securities Indus. Ass'n v. Connolly, _______________________ ________ 883 F.2d 1114, 1118-19 (1st Cir. 1989), cert. denied, 495 _____ ______ U.S. 956 (1990). Arbitration agreements are unenforceable under 2 of the FAA only where the agreement would be revocable under state contract law. Southland Corp. v. _______________ Keating, 465 U.S. 1, 11 (1984) (party may assert general _______ contract defenses, such as fraud and duress, to avoid enforcement of arbitration agreement); McAllister Bros., Inc. ______________________ v. A & S Transp. Corp., 621 F.2d 519, 524 (2d Cir. 1980) _____________________ (same).4 Although this court has never decided whether a foreign arbitration clause in a bill of lading governed by COGSA is invalid under 3(8) of that statute, courts that ____________________ 4. Bacchus argued below that the bill of lading was a contract of adhesion, and that the arbitration clause was therefore unenforceable. This defense was rejected by the district court, and that ruling is not before us on the present appeal. We recognize, however, that maritime bills of lading have been viewed as contracts of adhesion. See, ___ e.g., Organes Enters., Inc. v. M/V Khalij Frost, 1989 A.M.C. ____ ______________________ ________________ 1460, 1465-66 (S.D.N.Y. 1989); Pacific Lumber & Shipping Co. _____________________________ v. Star Shipping A/S, 464 F. Supp. 1314, 1315 (W.D. Wash. __________________ 1979). Accordingly, if the adhesion issue had been a subject of this interlocutory appeal, it would warrant close scrutiny. -10- 10 have reached the question are divided. A handful of courts, including the Eleventh Circuit, have employed the reasoning articulated in Indussa to invalidate foreign arbitration _______ clauses. See, e.g., Wesermunde, 838 F.2d at 1580-82; M/V ___ ____ __________ ___ Khalij Frost, 1989 A.M.C. at 1462-66; Siderius v. M.V. Ida ____________ ________ ________ Prima, 613 F. Supp. 916, 920-21 (S.D.N.Y. 1985); Star _____ ____ Shipping A/S, 464 F. Supp. at 1314-15; see also Gilmore & ____________ ___ ____ Black, supra, 3-25 at 146 n.23; Schoenbaum, supra 9-19 at _____ _____ 329. In Wesermunde, the Eleventh Circuit declined to __________ enforce a foreign arbitration agreement contained in a bill of lading governed by COGSA. Relying on Indussa, the court _______ explained as follows: While we do not believe that arbitration in and of itself is per se violative of ___ __ COGSA's provisions, especially in light of Congress' encouragement of arbitration by its enactment of the Arbitration Act, 9 U.S.C. 1-14 (1970) the court does believe that a provision requiring arbitration in a foreign country that has _______ no connection with either the performance of the bill of lading contract or the making of the bill of lading contract is a provision that would conflict with COGSA's general purpose of not allowing carriers to lessen their risk of liability. Wesermunde, 838 F.2d at 1581 (footnote omitted). Some courts __________ have gone one step further, holding that foreign arbitration clauses in bills of lading are per se invalid under COGSA ___ __ because "[t]he considerations [stated in Indussa] are _______ -11- 11 substantially similar where the bill of lading requires the consignee to arbitrate in a foreign country." Siderius, 613 ________ F. Supp. at 920; accord Khalij Frost, 1989 A.M.C. at 1462 ______ ____________ (Indussa rationale "appl[ies] with equal force in the case of _______ a foreign arbitration clause in a bill of lading"). On the other side of the coin, numerous federal courts have upheld foreign arbitration clauses in bills of lading subject to COGSA. See, e.g., Nissho Iwai Amer. Corp. ___ ____ _______________________ v. M/V Sea Bridge, 1991 A.M.C. 2070 (D. Md. 1991); Citrus _______________ ______ Mktg. Bd. v. M/V Ecuadorian Reefer, 754 F. Supp. 229 (D. __________ ______________________ Mass. 1990); Travelers Indem., Co. v. M/V Mediterranean Star, _____________________ ______________________ 1988 A.M.C. 2483 (S.D.N.Y. 1988); Mid South Feeds, Inc. v. ______________________ M/V Aqua Marine, 1988 A.M.C. 437 (S.D. Ga. 1986); Midland Tar _______________ ___________ Distillers, Inc. v. M/T Lotos, 362 F. Supp. 1311, 1315 _________________ __________ (S.D.N.Y. 1973); Mitsubishi Shoji Kaisha Ltd. v. MS Galini, ____________________________ _________ 323 F. Supp. 79, 83-84 (S.D. Tex. 1971); Kurt Orban Co. v. _______________ S/S Clymenia, 318 F. Supp. 1387, 1390 (S.D.N.Y. 1970). ____________ We join those courts upholding the validity of foreign arbitration clauses in bills of lading subject to COGSA. In reaching this result, we are guided by our belief that the FAA alone governs the validity of arbitration clauses, both foreign and domestic, and consequently removes them from the grasp of COGSA.5 ____________________ 5. We recognize, however, that absent the FAA, COGSA might operate to nullify foreign arbitration clauses in bills of lading. -12- 12 We begin with two canons of statutory interpretation. First, a later enacted statute generally limits the scope of an earlier statute if the two laws conflict. Davis v. United States, 716 F.2d 418, 428 (7th _____ ______________ Cir. 1983); Tennessee Gas Pipeline Co. v. Federal Energy ____________________________ _______________ Regulatory Comm'n, 626 F.2d 1020, 1022 (D.C. Cir. 1980); __________________ Indussa, 377 F.2d at 204 n.4;6 see generally 2B Norman J. _______ ___ _________ ____________________ 6. Footnote four of Indussa states: _______ Our ruling does not touch the question of arbitration clauses in bills of lading which require this to be held abroad. The validity of such a clause in a charter party, or in a bill of lading effectively incorporating such a clause in a charter party, have been frequently sustained. Although the Federal Arbitration Act adopted in 1925 validated a written arbitration provision "in any maritime transaction," 2, and defined that phrase to include "bills of lading of water carriers," 1. COGSA, enacted in 1936, made no reference to that form of procedure. If there be any _____________________ inconsistency between the two acts, _________________________________________ presumably the Arbitration Act would _________________________________________ prevail by virtue of its reenactment as _________________________________________ positive law in 1947. ____________________ Indussa, 377 F.2d at 204 n.4 (citations omitted) (emphasis _______ added). Although a later Second Circuit opinion sought to narrow the scope of this dictum, see Aaacon Auto Transp. Co. ___ _______________________ v. State Farm Mut. Auto Ins. Co., 537 F.2d 648, 655 (2d Cir. _____________________________ 1976) (explaining that footnote four of Indussa was concerned _______ "primarily . . . upon those commercial situations in which the economic strength and bargaining power of the parties is roughly equal"), courts have continued to rely on footnote four in enforcing foreign arbitration clauses in bills of lading governed by COGSA. See Fakieh Poultry Farms v. M/V ___ _____________________ ___ Mulheim, No. 85 Civ. 26577, slip op. at 2 (S.D.N.Y. Oct. 24, _______ 1986); M/V Mediterranean Star, 1988 A.M.C. at 2484-85; see _______________________ ___ also Kaystone Chem., Inc. v. Bow-Sun, 1989 A.M.C. 2976, 2981- ____ ____________________ _______ -13- 13 Singer, Sutherland Statutory Construction 51.03 at 141 (5th _________________________________ ed. 1992). Second, where two statutes conflict, regardless of the priority of enactment, the specific statute ordinarily controls the general. See Watson v. Fraternal Order of ___ ______ ___________________ Eagles, 915 F.2d 235, 240 (6th Cir. 1990); see generally 2B ______ ___ _________ Sutherland Statutory Construction, 51.05 at 174. _________________________________ With respect to the former canon, the FAA must be given priority over COGSA in light of the FAA's reenactment in 1947, eleven years after COGSA was passed. Similarly, the latter canon suggests that the FAA be given effect. Section 3(8) of COGSA, which voids any clause in a bill of lading that "lessens" the carrier's liability, makes no reference to arbitration, or for that matter, forum selection clauses.7 Conversely, the FAA specifically validates arbitration clauses contained in maritime bills of lading. See 9 U.S.C. ___ 1, 2. ____________________ 82 (S.D.N.Y. 1989) (stating that Indussa footnote "probably" _______ requires enforcement of foreign arbitration clause in COGSA bill of lading). But see Siderius, 613 F. Supp. at 920-21 ___ ___ ________ (holding Aaacon substantially undercuts scope of the Indussa ______ _______ footnote); Khalij Frost, 1989 A.M.C. at 1463-64 (same). _____________ While we agree with the rule of statutory construction expressed in the footnote, we take no position on the effect of Aaacon on that note. ______ 7. In fact, up until Indussa, the Second Circuit regularly _______ enforced foreign forum selection clauses in bills of lading governed by COGSA. See, e.g., William H. Muller & Co. v. ___ ____ _________________________ Swedish Amer. Line Ltd., 224 F.2d 806 (2d Cir.), cert. _________________________ _____ denied, 350 U.S. 903 (1955); Cerro de Pasco Copper Corp. v. ______ ____________________________ Knut Knutsen, O.A.S., 187 F.2d 990 (2d Cir. 1951). ____________________ -14- 14 Next, and perhaps of paramount importance, we believe that the strong federal policy favoring arbitration supports the primacy of the FAA over COGSA where arbitration agreements are concerned. See Ecuadorian Reefer, 754 F. ___ __________________ Supp. at 233-34. The existence of this policy distinguishes the present case from foreign choice-of-forum cases because in those cases "there was no compelling congressional mandate in favor of giving effect to agreements to litigate before foreign tribunals." MS Galini, 323 F. Supp. at 83. _________ Furthermore, American courts' mistrust of foreign courts, a driving force in the Indussa court's decision to _______ invalidate foreign choice-of-forum clauses, is an inappropriate consideration in the context of arbitration. See Mitsubishi Motors, 473 U.S. at 626-27 (We are "well past ___ _________________ the time when judicial suspicion of . . . arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution."); Connolly, 883 F.2d at 1119 ("[C]ourts must be ________ on guard for artifices in which the ancient suspicion of arbitration might reappear."). Finally, unlike a foreign forum selection clause, an agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute. S/S Clymenia, 318 F. Supp. at 1390; MS _____________ __ Galini, 323 F. Supp. at 83. ______ -15- 15 For the foregoing reasons, the order of the district court is Affirmed. Affirmed. ________ -16- 16