**MITSUBISHI SHOJI KAISHA LTD.**

**v.**

**MS GALINI, her engines, etc., et al.**

**Civ. A. No. 69–H–1198.**

United States District Court,
S. D. Texas,
Houston Division.

Feb. 22, 1971.

Joseph Newton, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for plaintiff.

J. E. Davey, Eikel & Davey, David C. Redford, Royston, Rayzor & Cook, Houston, Tex., for defendants.

SINGLETON, District Judge.

*Opinion and Order*:

This is a cargo contamination suit, designated as a case of admiralty and maritime jurisdiction within Rule 9(h), Federal Rules of Civil Procedure. On November 1, 1968, there was delivered to and shipped on board the M/S GALINI a certain shipment of Mexican maize said by plaintiff to be in good condition at the time and destined for several Japanese ports. When the cargo was discharged in Japan, it was found to be contaminated. Plaintiff, a Japanese concern, was to notify party in a bill of lading pursuant to which the cargo was shipped and ultimately became a holder in due course of the bill of lading. Defendant Vygla Steamship Co. is the owner of the M/S GALINI. Defendant Andre & Cie, S.A. is the charterer. Pending at this time are a motion to stay the proceedings pending arbitration by the charterer, a motion to quash service and dismiss by the shipowner, and a motion for default judgment by plaintiff.

## SHIPOWNER'S MOTION TO QUASH

Vygla Steamship Company moves to quash because the Philen Shipping Company of Brownsville, Texas, on whom the complaint was served, is not its agent and further because it does not have sufficient business contacts with Texas.[1] It appears from the papers on file that the M/S GALINI is a Liberian flag vessel. The owner is a corporation organized under the laws of Panama whose principal place of business is in Athens, Greece. The M/S GALINI is the only vessel owned by the Vygla Steamship Company. It has not had any regular routes to Texas ports since January, 1963, but since that time it has visited ports in Texas on six isolated occasions,[2]

1. The affidavit of Apostolas Michael Tziras, a director of Vygla Steamship Company, reflects that the company has no agent for service of process. From the plaintiff's statement on page 1 of the Memorandum in Opposition to Shipowner's Motion to Quash Service that "the parties have agreed to treat this motion as if process upon the shipowner had been delivered to the Secretary of State of Texas as called for" in Art. 2031b, V.A.T.S., it does not appear that plaintiff seriously contests that fact.

2. 1. Arrived Galveston, November 17, 1964, and departed November 27, 1964.

including the one on which the grain at the heart of the present controversy was loaded. In each instance, the M/S GALINI was chartered by a third party who had business at the Texas port to where the M/S GALINI traveled.

Prior to the M/S GALINI's trip to Brownsville in 1968, it first went to New Orleans, Louisiana, where grain fittings were installed in the vessel by the Strachan Shipping Company. Strachan had previously purchased them from a lumber company headquartered in Jackson, Mississippi, but which has an office in Leesville, Louisiana, a city within one hundred miles of New Orleans. Neither of these companies have offices in Texas. These facts are important in light of a survey report prepared for plaintiff by another Japanese corporation finding that the damage to the grain was caused by green wood having been used in the construction of the grain feeders in each hatch, a condition aggravated by the enforced closure of all deck openings during stormy weather encountered by the ship in transit.

■ The guiding standard in resolving the question of jurisdiction *vel non* is Article 2031b, V.A.T.S.,[3] which provides:

"Sec. 3. Any foreign corporation * * * that engages in business in this State * * * and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action *arising out of such business done in this State* * * * shall be deemed equivalent to an appointment by such foreign corporation * * * of the Secretary of State of Texas as agent upon whom service of process may be made in any action * * * *arising*

*out of such business done in this State* * * *.

"Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation * * * shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State." (Emphasis added)

The Texas Long Arm Statute has been held on numerous occasions to reach just as far as Fourteenth Amendment Due Process will permit. Coulter v. Sears, Roebuck and Co., 426 F.2d 1315 (5th Cir. 1970); Eyerly Aircraft Co. v. Killian, 414 F.2d 591 (5th Cir. 1969); Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966); Lone Star Motor Import, Inc., v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961); AMCO Transworld, Inc. v. M/V BAMBI, 257 F.Supp. 215 (S.D.Tex.1966); Trinity Steel Co. v. Modern Gas Sales and Service Co., 392 S.W.2d 861 (Tex.Civ.App. Texark., 1965, n.r.e.). And due process will permit when the nonresident has "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). McGee v. International Life Insurance Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957), where jurisdiction in a suit by a California plaintiff in a California court was sustained even though the only contact with California by the insurance company was the solicitation of one reinsurance policy,

2. Arrived Galveston, June 27, 1965, and departed June 30, 1965.

3. Arrived Brownsville, July 1, 1965, and departed July 6, 1965.

4. Arrived Houston, August 14, 1966, and departed August 20, 1966.

5. Arrived Houston, October 5, 1967, and departed October 20, 1967.

6. Arrived Brownsville, October 16, 1968, and departed November 1, 1968.

3. Article 2031b, V.A.T.S. governs in this instance because of Rule 4(e), F.R.Civ. P. The Admiralty Rules were merged with the Federal Rules of Civil Procedure in 1966.

teaches that there need only be one contact to satisfy the demands of due process if that contact is sufficiently substantial. *McGee,* supra, proved to be the high-water mark of the trend toward expanding jurisdiction. *See* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The latter-mentioned case held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at p. 253, 78 S.Ct. at p. 1240.

■ Here, the one contact with the State of Texas by the shipowner is that the grain, later found to be contaminated, was loaded at a Texas port. The gravity of this single contact, however, sufficiently warrants a finding that there is jurisdiction. The business of the shipping company is to go where the charterer directs. The charterer in this suit directed the vessel to pick up grain at Brownsville, Texas. Thus, the shipping company by that act engaged in business in Texas. If the shipowner were not doing business in Texas, then it was not doing business anywhere, except in places where it maintained offices. *See* Hoodye v. Bruusgard Krosterud Skibs A/S Drammen, Norway, 197 F.Supp. 697 (S.D.Tex.1961).

■ Defendant relies on a number of cases for the proposition that if the only contact that a shipping company has with a state is through its tramp ships making sporadic visits at ports, such does not constitute sufficient minimal contacts. Pappas v. S.S. ARISTIDIS, 249 F.Supp. 692 (E.D.Va.1965); Alcalde v. The LOS MAYAS, 184 F.Supp. 873 (E.D.Va.1960); George H. McFadden &

Bros. v. The M/S SUNOAK, 167 F. Supp. 132 (E.D.Va.1958); Higgins v. California Tanker Co., 166 F.Supp. 569 (E.D.Pa.1957); Novitski v. Lykes Steamship Co., 90 F.Supp. 971 (E.D.Pa. 1950); Dawson v. Alaska S.S. Co., 12 F.R.D. 527 (S.D.N.Y.1952). In none of these cases does it clearly appear, as here, that the plaintiff's cause of action is integrally connected with the contact urged as the basis for jurisdiction. The very reason that the M/S GALINI came to Texas was to honor its obligation under a contract which was to be performed, in part, in Texas. Vygla Steamship Company was "doing business" in Texas in the strictest sense of the term.[4]

The motion to dismiss and to quash service will, therefore, be denied.

### CHARTERER'S MOTION TO STAY

By its own terms, the bill of lading is "subject to all terms, conditions, and exceptions of the charter party dated at London, England, October 4, 1968, and any addenda thereto." Moreover, the bill of lading provides in clause one that it is subject to the Carriage of Goods at Sea Act,[5] which it expressly deems to be incorporated into it. Any term of the bill of lading which is repugnant to COGSA is, again by the bill's own terms, "void to that extent but no further."[6]

The charter party, entered into by Vygla Steamship Co. and Andre & Cie contains a "Centrocon" Arbitration Clause which provides:

"All the disputes from time to time arising out of this contract shall * * be referred to the final arbitrament of two arbitrators carrying on business in London * * *. Any claim

4. Defendant's reliance on Pacific Employers Insurance Co. v. Parry Navigation Co., 195 F.2d 372 (5th Cir. 1952) is unpersuasive. That decision, being before McGee, *supra,* and other cases, e. g. Coulter v. Sears, Roebuck and Co., *supra,* following the trend toward expanded jurisdiction, is of doubtful authoritative value.

5. 46 U.S.C. §§ 1300–1315

6. Such a provision, of course, harmonizes with 46 U.S.C. § 1300 which provides that "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter."

must be made in writing within three months of final discharge, and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred."

■ Plaintiff, in opposing the motion to stay, first contends that it was not a party to the charter party agreement and is, therefore, under no obligation to arbitrate. It is, of course, no doubt true that, as a general matter, arbitration is a creature of contract and a party cannot be compelled to arbitrate unless he has agreed to do so. All Ports Stevedoring Corp. v. Cargill, Inc., C.A. 68–H–781 (S.D.Tex.1969). Nevertheless, the instant case appears to be an exception to this principle. As was held in Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2nd Cir. 1952), where the terms of the charter party are, as here, expressly incorporated into a bill of lading, they are part of the contract of carriage and are binding upon those making a claim for damages for the breach of that contract just as they would be if the dispute were between the charterer. All Ports Stevedoring Corp. v. Cargill, Inc., *supra. See also* Lowry & Co. v. SS Le Moyne D'Iberville, 253 F.Supp. 396 (S.D.N.Y. 1966).

■ Plaintiff next contends that the arbitration clause cannot be enforced in any event because it is in conflict with COGSA. Specifically, plaintiff refers to 46 U.S.C. § 1303(8) [7] and relies heavily on Indussa Corp. v. S.S. Ranborg, 377 F.2d 200 (2nd Cir. 1967) and Carbon Black Export v. The SS Monrosa, 254 F. 2d 297 (5th Cir. 1958), cert. dism., 359 U. S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959). In each of these cases, it was held that Congress meant, by Section 1303(8), to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent a claimant able to obtain

jurisdiction in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed. In other words, the court, in each case, declined to enforce an agreement to litigate, in the event of a dispute, in the courts of a foreign country. Plaintiff thus contends that this holding would *a fortiori* control here. This contention cannot be sustained for several reasons. First, there is a factor in this case missing from those cited by plaintiff. Here, the arbitration agreement has been congressionally endorsed by the Federal Arbitration Act.[8] Section 2 of the act declares valid arbitration agreements in maritime transactions and transactions involving commerce. Section 3 provides that any suit brought in federal court upon any issue which by agreement is referable to arbitration shall be stayed on application of one of the parties. The language of Section 3, where made applicable by the terms of Section 2, is compulsory. Kirschner v. West Company, 185 F.Supp. 317 (E.D.Pa.1960), appeal dism. 300 F. 2d 133 (3rd Cir. 1962). In the cases cited by plaintiff, there was no compelling congressional mandate in favor of giving effect to agreements to litigate before foreign tribunals. Secondly, the cases cited by plaintiff are merely indicative of the reluctance of federal courts to enforce agreements ousting them of jurisdiction. An arbitration agreement, on the other hand, does not deprive a federal court of its jurisdiction. Uniao De Transportadores etc. v. Companhia De Navegacao etc., 84 F.Supp. 582 (E.D. N.Y.1949), citing American Sugar Refinery v. The Anaconda, 138 F.2d 765, 767 (5th Cir. 1943). Finally, the court in Indussa Corp. v. S.S. Ranborg, *supra,* did itself recognize the inapplicability of its holding to arbitration clauses:

> "Our ruling does not touch the question of arbitration clauses in bills of

7. "Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."

8. 9 U.S.C. § 1 et seq.

lading which require this to be held abroad. The validity of such a clause in a charter party, or in a bill of lading effectively incorporating such a clause in a charter party, has been frequently sustained. See Lowry & Co. v. S.S. Le Moyne D'Iberville, 253 F. Supp. 396 (S.D.N.Y.1966), appeal dismissed for want of jurisdiction, 372 F.2d 123 (2 Cir. 1967), slip opinions 1103, and cases cited. Although the Federal Arbitration Act adopted in 1925, 43 Stat. 883, validated a written arbitration provision 'in any maritime transaction', § 2, and defined that phrase to include 'bills of lading of water carriers,' § 1, COGSA, enacted in 1936, 49 Stat. 1207, made no reference to that form of procedure. If there be any inconsistency between the two acts, presumably the Arbitration Act would prevail by virtue of its reenactment as positive law in 1947, 61 Stat. 669. See Knauth, Ocean Bills of Lading, supra, at 238–239." (377 F. 2d 204, Fn. 4)

Plaintiff's argument that arbitration clauses are *per se* contrary to COGSA has, indeed, been rejected. Pincoffs et al. v. M/V Longfellow etc., et al., A.N. 1563 (S.D.Tex.1958); Uniao De Transportadores etc. v. Companhia De Navegacao etc., *supra*.

It is apparent, therefore, that the motion to stay must be granted.

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Since the time plaintiff moved for default, a motion based on defendants' failure to answer or otherwise plead, defendants filed the motions discussed above. In that circumstance, the motion for default judgment will be denied.

It is, therefore, ordered that the motion of defendant Andre & Cie, S.A. to stay pending arbitration be, and the same is hereby, granted and that further proceedings herein be, and the same are hereby, stayed pending arbitration;

Further ordered that all parties shall now proceed to arbitration pursuant to the arbitration clause of the charter party, with jurisdiction hereof hereby retained by the court;

Further ordered that the motion of Vygla Steamship Company to quash service of process and to dismiss be, and the same is hereby, denied;

Further ordered that the motion of plaintiff for default judgment be, and the same is hereby, denied.

The clerk of this court shall file this Memorandum and Order and send true copies to counsel of record.