CASTLE & COOKE, INC., Plaintiff,

v.

ETOILE SHIPPING CO., LTD., et al., Defendants.

Civ. No. 83–2689 HL.

United States District Court,
D. Puerto Rico.

Oct. 16, 1985.

Antonio M. Bird, Bird & Bird, San Juan, Puerto Rico, for plaintiff.

Gustavo Gelpí, San Juan, Puerto Rico, for defendants Rederiaktiebolaget Gustaf Erikson and British Marine Mut. Ins. Assn. Ltd.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Castle & Cooke, Inc., the parent corporation of Bumble Bee Seafoods and Bumble Bee Puerto Rico,[1] brought this admiralty action for monetary damages against defendants, M.V. Reefer Insel ("Insel"), Etoile Shipping Co., Ltd. ("Etoile"), the owner of the Insel, Rederiaktiebolaget Gustaf Erikson ("Erikson"), the time-charter owner of the Insel, and British Marine Mutual Insurance Assoc., Ltd. ("BMMI"), the assurer of the owners and charterer. The action is based on the partial loss of a cargo of frozen tuna. Plaintiff filed claims against Etoile and Erickson for negligence and breach of duty as common carriers under the terms of the bills of lading, and a claim against Erikson alone for breach of duty under the charter party. Defendant Erikson filed a cross-claim against Etoile for indemnification if liability is found.

Before the Court are defendants' Motion to submit plaintiff's claims to arbitration and a Motion to stay the proceedings pend-

1. Bumble Bee Seafoods and Bumble Bee Puerto Rico have assigned their claims in this action to Castle & Cooke.

ing arbitration. The Court grants defendants' Motion and compels plaintiff to arbitrate its claims against all defendants in London, England. Since no claim remains before us, the action is dismissed without prejudice under Fed.R.Civ.P. 41.

On September 10, 1982, Bumble Bee Seafoods entered into a voyage charter party with Erikson, the time charter owner of the Insel, to ship 800–900 metric tons of frozen tuna from Mayaguez to Palermo. Pursuant to the charter party Erikson was responsible for loss or damage to the cargo resulting from a lack of care in assuring that the vessel was properly manned, equipped, supplied and is, in all respects seaworthy and suitable for carriage of frozen tuna. The charter party includes an arbitration clause. Clause 26 states:

"Any dispute between Owners and Charterers under this Charter Party shall be submitted to arbitration in London, according to the laws of England."

On September 27, 1982, Bumble Bee Seafood and Bumble Bee Puerto Rico delivered 850 metric tons of frozen tuna to the Insel at the Port of Mayaguez, Puerto Rico, to be shipped to Palermo and Trieste, Italy. In consideration for the freight of tuna, the Master of the Insel issued Bumble Bee Puerto Rico three bills of lading for carriage of the cargo. Each bill of lading stated expressly that it is to be used with the charter party. The bill of lading Conditions of Carriage Clause (1) reads:

All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated.

The applicable charter party dated on the overleaf is the September 10, 1982 agreement between Bumble Bee Seafood and Erikson.

Plaintiff claims that the cargo of tuna arrived in Italy partially damaged due to an inadequate refrigeration. Plaintiff admits that the claim against Erikson for breach of the charter party must be submitted to arbitration in accordance with clause 26 of the agreement. Defendants contend that plaintiff is bound to arbitrate all claims against all defendants. Defendants' mo-

tion to submit this action to arbitration raises the issues whether the arbitration clause in the voyage charter party between plaintiff and Erikson is incorporated in the bills of lading and, if so, whether plaintiff's claim against Etoile and BMMI can be submitted to arbitration even though they are not signatories to the charter party.

■ It is well settled that where "the terms of the charter party are ... expressly incorporated into the bills of lading they are part of the contract of carriage and are binding upon those making a claim for damages for breach of the contract..." *Son Shipping Co. v. DeFosse & Tanghe,* 199 F.2d 687, 688 (2nd Cir.1952); *see also, Bunge Corp. v. Stalt Hippo,* 1980 AMC 2611, 2614 (S.D.N.Y.1980); *Midland Tar Distillers, Inc. v. M/T Lotos,* 1973 A.M.C. 1924 (S.D.N.Y.1973); *Mitsubishi Shoji Kaisha Ltd. v. M/S Galini,* 323 F.Supp. 79, 82 (S.D.Tex.1971); *Michael v. S.S. Thanasis,* 311 F.Supp. 170, 173 (N.D.Calif.1970); *Lowry & Co. v. LeMoyne D'Iberville,* 253 F.Supp. 396, 398 (S.D.N.Y.1966). To compel arbitration pursuant to a clause in a charter party it is not necessary for the claimant to be a party to the charter agreement. *Bunge, supra,* at 2614. It is enough that the clause was unequivocally incorporated in the bill of lading and the shipper was aware of the incorporation. *SS Thanasis, supra,* at 173.

■ The bills of lading here explicitly incorporate all "terms and conditions, liberties and exceptions of the Charter Party" dated September 10, 1982. The bills of lading are neither long nor abstruse and the incorporation clause is conspicuously placed as Clause (1) under Conditions of Carriage. Most importantly, plaintiff in the present action is both a party to the charter party and holder of the bills of lading. Plaintiff, therefore, had either actual or constructive knowledge that the terms of the charter party were incorporated in the terms of carriage of the bills of lading.

Plaintiff relies on two cases to support its claim that the bills of lading represent a

separate contract with Etoile and Erikson and do not incorporate the terms of the charter party: *Tropical Gas Co. v. M/T Mundogas Caribe*, 388 F.Supp. 647 (D.P.R. 1974) and *Commercial Metals Co. v. Star Int'l.*, 1984 A.M.C. 75 (S.D.N.Y.1982). These cases can be distinguished from the present case. In *Tropical Gas* the bill of lading left a blank space where the date of the charter party and the identity of the parties to the agreement were to be provided. The court decided that absent identification of the agreement, the parties were without notice as to "what, if any, charter party was intended to be incorporated." Id. at 649. In the present case, the charter party is specifically identified and plaintiff had notice of its incorporation.

In *Commercial Metals*, the court held that a charter party arbitration provision, even though incorporated into a bill of lading, is only applicable to the signatories to the charter party if it is expressly "restricted to the immediate parties or limited to disputes 'between the ... Owners and the Charterers'." 1984 A.M.C. at 78, [citing *Lowry & Co. v. S.S. LeMoyne D'Iberville*, 253 F.Supp. 396 (S.D.N.Y.1966)].[2] The court indicates that this decision may have been influenced by the facts of the case: that plaintiff's dispute with the third party defendants were different from the arbitrable dispute under the charter party and that discovery had been completed and the case was ready for trial.

The facts of the present case are distinguishable from *Commercial Metals*. Here there exists only one dispute—the alleged damage to the tuna fish. The claim against each defendant arises out of the same core of operative facts. The claims also arise from the same legal basis which is the charter party as incorporated by the bills of lading. No discovery has commenced by either party. It would lead to a duplication of effort and potentially conflicting results if plaintiff proceeded to arbitrate its claims against Erikson in London, which he must, while trial proceeded

on the identical claim against Etoile. The illogic of allowing litigation to proceed in this Court is compounded by the fact that Erikson has cross-claimed against Etoile claiming that he is entitled to indemnification if it is found that the damage was caused by the Master or other servant of Etoile.

The Court finds that the September 10, 1982 charter party between plaintiff and Erikson was specifically incorporated in the bills of lading by clause 1 of the Contract of Carriage. Since the bills of lading are the only documents which regulate the relationship between Etoile and plaintiff, plaintiff's claims against Etoile are subject to the terms of the charter party, including the arbitration clause. For these reasons, the Court grants defendants' motion to compel plaintiff to submit all claims against all defendants to arbitration.

As there remains no claim before this Court, the complaint is dismissed without prejudice.

The Clerk shall enter judgment dismissing the complaint without prejudice.

IT IS SO ORDERED.

---

**2.** This decision is in the minority. The majority of courts have applied incorporated charter party provisions to nonsignatories without discussing whether the charter party limits arbitration. *Supra,* see cases at p. 610. This Court follows the decisions of the majority.