**VIMAR SEGUROS Y REASEGUROS, S.A., Plaintiffs, Appellants,**

v.

**M/V SKY REEFER, Her Engines, etc., and M.H. Maritima, S.A., Defendants, Appellees.**

No. 93–2179.

United States Court of Appeals, First Circuit.

Heard April 8, 1994.

Decided July 7, 1994.

Stanley McDermott, III with whom Sharyn Bernstein, Varet & Fink, P.C., Alex-

ander Peltz, and Peltz Walker & Dubinsky, New York City, were on brief, for appellants.

John J. Finn with whom Thomas H. Walsh, Jr., Jeffrey S. King, and Bingham, Dana & Gould, Boston, MA, were on brief, for appellees.

Before BREYER *, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

This appeal asks us to decide whether a foreign arbitration clause in a maritime bill of lading governed by the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* (COGSA), is invalid under that statute, or whether such a clause is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (FAA). We conclude that the FAA controls, and that the arbitration clause is valid. Accordingly, the order of the district court staying this action pending arbitration in Tokyo is affirmed.

## I.

### *BACKGROUND*

Plaintiff-appellant Bacchus Associates is a wholesale fruit distributor in the Northeast United States. Bacchus was the owner of a shipment of oranges travelling from Agadir, Morocco to New Bedford, Massachusetts, in February 1991 aboard the SKY REEFER,[1] a vessel owned by M.H. Maritima, S.A. Maritima had time-chartered the vessel to Honma Senpaku Co., Ltd., who in turn time-chartered it to Nichiro Corp. Bacchus entered into a voyage charter with Nichiro for the February 1991 voyage.

The oranges were shipped under a bill of lading issued in Morocco by Nichiro. The bill of lading constitutes the contract of carriage between Bacchus and Maritima. En route to New Bedford, numerous boxes of oranges were crushed. Bacchus filed an action in the United States District Court for

the District of Massachusetts, *in rem* against the SKY REEFER, and *in personam* against Maritima, seeking to recover approximately $1 million in damages.

Maritima moved to stay the action and compel arbitration in Tokyo pursuant to a clause in the bill of lading:

**Governing Law and Arbitration**

(1) The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese Law.

(2) Any dispute arising from this Bill of Lading shall be referred to arbitration in Tokyo by the Tokyo Maritime Arbitration Commission (TOMAC) at the Japan Shipping Exchange, Inc., in accordance with the Rules of TOMAC and any agreement thereto, and the award given by the arbitrators shall be final and binding on both parties.

The district court held that the arbitration clause contained in subsection (2) was enforceable, granted Maritima's motion for a stay pending arbitration, and certified the following question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): "[W]hether 46 U.S.C. § 1303(8) [§ 3(8) of COGSA] nullifies an arbitration clause contained in a bill of lading governed by COGSA." With this question in mind, we begin our journey through unsettled statutory waters.

## II.

### *DISCUSSION*

■ COGSA was passed in 1936 as the American enactment of the Hague Rules, and was part of an international effort to achieve uniformity and simplicity in bills of lading used in foreign trade. *Union Ins. Soc'y of Canton, Ltd. v. S.S. Elikon*, 642 F.2d 721, 723 (4th Cir.1981). COGSA was also intended to reduce uncertainty concerning the responsibilities and liabilities of carriers, responsibilities and rights of shippers, and liabilities of insurers. *State Establishment for Agric. Prod. Trading v. M/V Wesermunde*,

---

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

1. The subrogated underwriter of the oranges, Vimar Seguros Y Reaseguros, is also a plaintiff-appellant in this action. Hereafter, references to Bacchus include Vimar where applicable.

838 F.2d 1576, 1580 (11th Cir.), *cert. denied,* 488 U.S. 916, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988) (*"Wesermunde"*); *S.S. Elikon,* 642 F.2d at 723; *see generally* Grant Gilmore & Charles L. Black, *The Law of Admiralty* § 3–25 at 145 (2d ed. 1975).

COGSA applies to "[e]very bill of lading ... which is evidence of a contract for the carriage of goods by sea to or from parts of the United States, in foreign trade...." 46 U.S.C. § 1300. The parties agree that the bill of lading at issue here is covered by COGSA *ex proprio vigore,* in other words, as a matter of law. The bill of lading also contains the following provision:

**Local Law**

In case this Bill of Lading covers the Goods moving to or from the U.S.A. and it shall be adjudged that the Japanese Law does not govern this Bill of Lading, then the provisions of the U.S. Carriage of Goods at Sea Act 1936 shall govern before the Goods are loaded on and after they are discharged from the vessel and throughout the entire time during which the Goods are in the actual custody of the carrier.

Bacchus argues that the Tokyo arbitration clause is invalid under § 3(8) of COGSA which prohibits the "lessening" of the carrier's obligation as imposed by COGSA's other sections.[2]

■ In *Indussa Corp. v. S.S. Ranborg,* 377 F.2d 200 (2d Cir.1967) (en banc), the Second Circuit held that all foreign forum selection clauses in bills of lading governed by COGSA are necessarily invalid under § 3(8) because they tend to lessen the carrier's liability. *Id.* at 204. The court reasoned as follows:

From a practical standpoint, to require an American plaintiff to assert his claim only

in a distant court lessens the liability of the carrier quite substantially, particularly when the claim is small. Such a clause puts "a high hurdle" in the way of enforcing liability, and thus is an effective means for carriers to secure settlements lower than if cargo [sic] could sue in a convenient forum.

*Id.* at 203.[3] Moreover, "[a] clause making a claim triable only in a foreign court would almost certainly lessen liability if the law which the court would apply was not [COGSA]." *Id.* Furthermore,

[e]ven when the foreign court would apply [COGSA], requiring trial abroad *might* lessen the carrier's liability since there could be no assurance that it would apply [COGSA] in the same way as would an American tribunal subject to the uniform control of the Supreme Court.... We think that Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo [sic] able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed.

*Id.* at 203–04 (emphasis in original) (citations omitted) (footnote omitted).

Since *Indussa,* § 3(8) has been consistently used by federal courts to invalidate forum selection clauses in bills of lading governed by COGSA. *See, e.g., Conklin & Garrett, Ltd. v. M/V Finnrose,* 826 F.2d 1441, 1442–44 (5th Cir.1987) (forum selection clause designating Finland invalid even where bill of lading provided for application of COGSA in Finland); *Union Soc'y of Canton, Ltd.,* 642

---

**2.** This provision provides as follows:

Any clause, covenant or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties or obligations provided in this section, or lessening such liability otherwise than as provided in this Act, shall be null and void and of no effect. 46 U.S.C. § 1303(8).

**3.** The court also concluded that COGSA, wherever it governs a bill of lading, requires application of American law. *Indussa,* 377 F.2d at 203; *see generally* Thomas J. Schoenbaum, *Admiralty &*

*Maritime Law* § 9–18 at 326–27 (Pra. ed. 1987). Bacchus contends that the Japanese choice-of-law clause in its bill of lading, in addition to the arbitration clause, is null and void under § 3(8) of COGSA, and, alternatively, that the "Local Law" clause in the bill of lading requires that COGSA, and not Japanese law, governs, because COGSA applies *ex proprio vigore.* Although both of these arguments appear to be substantial, only the validity of the arbitration clause is at issue on this interlocutory appeal. In light of our holding, the choice-of-law question must be decided, in the first instance, by an arbitrator.

F.2d at 723–25 (choice of forum clause requiring litigation in Germany invalid under § 3(8)); *cf. Fireman's Fund Amer. Ins. Cos. v. Puerto Rican Forwarding Co.*, 492 F.2d 1294 (1st Cir.1974) (distinguishing *Indussa* and upholding New York City forum selection clause). *Indussa* has also been approved by commentators. *See* Gilmore & Black, *supra* § 3–25 at 145–46 n. 23; Schoenbaum, *supra* § 9–18 at 327; Charles L. Black, *The Bremen, COGSA and the Problem of Conflicting Interpretation*, 6 Vand.J.Trans.L. 365, 368–69 (1973). *But see* Note, Kenneth M. Klemm, *Forum Selection in Maritime Bills of Lading Under COGSA*, 12 Fordham Int'l L.J. 459 (1989); Stephen M. Denning, *Choice of Forum Clauses in Bills of Lading*, 2 J.Mar.L. & Com. 17 (Oct. 1970).

While we need not fully explore the issue, we note that the Supreme Court's recent decision in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), in which the Court held that the Limitation of Vessel Owners' Liability Act did not invalidate forum selection agreements, casts some doubt upon *Indussa's* continuing viability. *See Fabrica De Tejidos La Bellota S.A. v. M/V MAR*, 799 F.Supp. 546, 560–61 (D.Virgin Islands 1992); *see also* Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts After Carnival Cruise: A Proposal for Congressional Reform*, 67 Wash.L.Rev. 55, 77 (1992) (*Carnival Cruise*, implicitly overruled *Indussa* and its progeny). *But see Underwriters at Lloyd's of London v. M/V Steir*, 773 F.Supp. 523, 526–27 (D.P.R.1991) (invalidating forum selection clause under § 3(8) of COGSA, holding that *Indussa* survives *Carnival Cruise*).

Moreover, in *Fireman's Fund* we questioned whether *Indussa* even survived the Supreme Court's decision in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *The Bremen*, the Supreme Court enforced a foreign forum selection clause in a maritime contract not covered by COGSA. In doing so, the Court focused on whether the clause was "unreasonable" under the circumstances.

*The Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913. We remarked as follows:

Although the Supreme Court has acknowledged the *Indussa* decision and has not formally rejected it, *see The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 n. 11, 92 S.Ct. 1907 [1913 n. 11], 32 L.Ed.2d 513 (1972), several passages in the Bremen opinion cast some doubt on the underlying rationale of *Indussa*. *See, e.g.,* 407 U.S. at 9, 92 S.Ct. at 1912 ("The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.")....

*Fireman's Fund*, 492 F.2d at 1296 n. 2. Because *The Bremen* is not a COGSA case, however, it is easily distinguishable from *Indussa* and its progeny. *See S.S. Elikon*, 642 F.2d at 724–25 (holding that *The Bremen* did not involve COGSA and therefore did not disturb *Indussa*).

Notwithstanding the arguably tremulous ground on which *Indussa* and its progeny currently sit, we will assume, *arguendo*, that, for the reasons set forth in *Indussa*, foreign forum selection clauses are invalid under § 3(8) of COGSA.

The other statute implicated in this case is the FAA. Section 2 of that act provides:

A written provision in any maritime transaction ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "[B]ills of lading of water carriers" are explicitly included as "maritime transactions" under the statute. 9 U.S.C. § 1. Furthermore, the FAA requires a federal district court, on the application of one of the parties, to stay litigation and grant an order compelling arbitration of any issue referable to arbitration under the agreement. *Id.* §§ 3, 4.

■ Where there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration. *Shear-*

son/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); Securities Indus. Ass'n v. Connolly, 883 F.2d 1114, 1118–19 (1st Cir. 1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990). Arbitration agreements are unenforceable under § 2 of the FAA only where the agreement would be revocable under state contract law. Southland Corp. v. Keating, 465 U.S. 1, 11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984) (party may assert general contract defenses, such as fraud and duress, to avoid enforcement of arbitration agreement); McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir.1980) (same).[4]

Although this court has never decided whether a foreign arbitration clause in a bill of lading governed by COGSA is invalid under § 3(8) of that statute, courts that have reached the question are divided. A handful of courts, including the Eleventh Circuit, have employed the reasoning articulated in Indussa to invalidate foreign arbitration clauses. See, e.g., Wesermunde, 838 F.2d at 1580–82; M/J Khalij Frost, 1989 A.M.C. at 1462–66; Siderius v. M.V. Ida Prima, 613 F.Supp. 916, 920–21 (S.D.N.Y.1985); Star Shipping A/S, 464 F.Supp. at 1314–15; see also Gilmore & Black, supra, § 3–25 at 146 n. 23; Schoenbaum, supra § 9–19 at 329.

In Wesermunde, the Eleventh Circuit declined to enforce a foreign arbitration agreement contained in a bill of lading governed by COGSA. Relying on Indussa, the court explained as follows:

> While we do not believe that arbitration in and of itself is per se violative of COGSA's provisions, especially in light of Congress' encouragement of arbitration by its enactment of the Arbitration Act, 9 U.S.C. §§ 1–14 (1970) the court does believe that a provision requiring arbitration in a for-

eign country that has no connection with either the performance of the bill of lading contract or the making of the bill of lading contract is a provision that would conflict with COGSA's general purpose of not allowing carriers to lessen their risk of liability.

Wesermunde, 838 F.2d at 1581 (footnote omitted). Some courts have gone one step further, holding that foreign arbitration clauses in bills of lading are per se invalid under COGSA because "[t]he considerations [stated in Indussa] are substantially similar where the bill of lading requires the consignee to arbitrate in a foreign country." Siderius, 613 F.Supp. at 920; accord Khalij Frost, 1989 A.M.C. at 1462 (Indussa rationale "appl[ies] with equal force in the case of a foreign arbitration clause in a bill of lading").

On the other side of the coin, numerous federal courts have upheld foreign arbitration clauses in bills of lading subject to COGSA. See, e.g., Nissho Iwai Amer. Corp. v. M/V Sea Bridge, 1991 A.M.C. 2070, 1991 WL 182117 (D.Md.1991); Citrus Mktg. Bd. v. M/V Ecuadorian Reefer, 754 F.Supp. 229 (D.Mass.1990); Travelers Indem., Co. v. M/V Mediterranean Star, 1988 A.M.C. 2483, 1988 WL 78363 (S.D.N.Y.1988); Mid South Feeds, Inc. v. M/V Aqua Marine, 1988 A.M.C. 437 (S.D.Ga.1986); Midland Tar Distillers, Inc. v. M/T Lotos, 362 F.Supp. 1311, 1315 (S.D.N.Y.1973); Mitsubishi Shoji Kaisha Ltd. v. MS Galini, 323 F.Supp. 79, 83–84 (S.D.Tex.1971); Kurt Orban Co. v. S/S Clymenia, 318 F.Supp. 1387, 1390 (S.D.N.Y. 1970).

■ We join those courts upholding the validity of foreign arbitration clauses in bills of lading subject to COGSA. In reaching this result, we are guided by our belief that the FAA alone governs the validity of arbitration clauses, both foreign and domestic,

4. Bacchus argued below that the bill of lading was a contract of adhesion, and that the arbitration clause was therefore unenforceable. This defense was rejected by the district court, and that ruling is not before us on the present appeal. We recognize, however, that maritime bills of lading have been viewed as contracts of adhe-

sion. See, e.g., Organes Enters., Inc. v. M/J Khalij Frost, 1989 A.M.C. 1460, 1465–66, 1989 WL 37660 (S.D.N.Y.1989); Pacific Lumber & Shipping Co. v. Star Shipping A/S, 464 F.Supp. 1314, 1315 (W.D.Wash.1979). Accordingly, if the adhesion issue had been a subject of this interlocutory appeal, it would warrant close scrutiny.

732

and consequently removes them from the grasp of COGSA.[5]

■■■ We begin with two canons of statutory interpretation. First, a later enacted statute generally limits the scope of an earlier statute if the two laws conflict. *Davis v. United States,* 716 F.2d 418, 428 (7th Cir. 1983); *Tennessee Gas Pipeline Co. v. Federal Energy Regulatory Comm'n,* 626 F.2d 1020, 1022 (D.C.Cir.1980); *Indussa,* 377 F.2d at 204 n. 4;[6] *see generally* 2B Norman J. Singer, *Sutherland Statutory Construction* § 51.03 at 141 (5th ed. 1992). Second, where two statutes conflict, regardless of the priority of enactment, the specific statute ordinarily controls the general. *See Watson v. Fraternal Order of Eagles,* 915 F.2d 235, 240 (6th Cir.1990); *see generally* 2B *Sutherland Statutory Construction,* § 51.05 at 174.

With respect to the former canon, the FAA must be given priority over COGSA in light of the FAA's reenactment in 1947, eleven years after COGSA was passed. Similarly, the latter canon suggests that the FAA be given effect. Section 3(8) of COGSA, which voids any clause in a bill of lading that "lessens" the carrier's liability, makes no reference to arbitration, or for that matter, forum selection clauses.[7] Conversely, the

FAA specifically validates arbitration clauses contained in maritime bills of lading. *See* 9 U.S.C. §§ 1, 2.

Next, and perhaps of paramount importance, we believe that the strong federal policy favoring arbitration supports the primacy of the FAA over COGSA where arbitration agreements are concerned. *See Ecuadorian Reefer,* 754 F.Supp. at 233–34. The existence of this policy distinguishes the present case from foreign choice-of-forum cases because in those cases "there was no compelling congressional mandate in favor of giving effect to agreements to litigate before foreign tribunals." *MS Galini,* 323 F.Supp. at 83.

■■■ Furthermore, American courts' mistrust of foreign courts, a driving force in the *Indussa* court's decision to invalidate foreign choice-of-forum clauses, is an inappropriate consideration in the context of arbitration. *See Mitsubishi Motors,* 473 U.S. at 626–27, 105 S.Ct. at 3354 (We are "well past the time when judicial suspicion of . . . arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution."); *Connolly,* 883 F.2d at 1119 ("[C]ourts must

---

5. We recognize, however, that absent the FAA, COGSA might operate to nullify foreign arbitration clauses in bills of lading.

6. Footnote four of *Indussa* states:

   Our ruling does not touch the question of arbitration clauses in bills of lading which require this to be held abroad. The validity of such a clause in a charter party, or in a bill of lading effectively incorporating such a clause in a charter party, have been frequently sustained. Although the Federal Arbitration Act adopted in 1925 validated a written arbitration provision "in any maritime transaction," § 2, and defined that phrase to include "bills of lading of water carriers," § 1. COGSA, enacted in 1936, made no reference to that form of procedure. *If there be any inconsistency between the two acts, presumably the Arbitration Act would prevail by virtue of its reenactment as positive law in 1947.*

   *Indussa,* 377 F.2d at 204 n. 4 (citations omitted) (emphasis added). Although a later Second Circuit opinion sought to narrow the scope of this dictum, *see Aaacon Auto Transp., Inc. v. State Farm Mut. Auto Ins. Co.,* 537 F.2d 648, 655 (2d Cir.1976) (explaining that footnote four of *Indussa* was concerned "primarily . . . upon those

commercial situations in which the economic strength and bargaining power of the parties is roughly equal"), courts have continued to rely on footnote four in enforcing foreign arbitration clauses in bills of lading governed by COGSA. *See Fakieh Poultry Farms v. M/V Mulheim,* No. 85 Civ. 26577, slip op. at 2, 1986 WL 12534 (S.D.N.Y. Oct. 24, 1986); *M/V Mediterranean Star,* 1988 A.M.C. at 2484–85; *see also Kaystone Chem., Inc. v. Bow–Sun,* 1989 A.M.C. 2976, 2981–82, 1989 WL 39498 (S.D.N.Y.1989) (stating that *Indussa* footnote "probably" requires enforcement of foreign arbitration clause in COGSA bill of lading). *But see Siderius,* 613 F.Supp. at 920–21 (holding *Aaacon* substantially undercuts scope of the *Indussa* footnote); *Khalij Frost,* 1989 A.M.C. at 1463–64 (same). While we agree with the rule of statutory construction expressed in the footnote, we take no position on the effect of *Aaacon* on that note.

7. In fact, up until *Indussa,* the Second Circuit regularly enforced foreign forum selection clauses in bills of lading governed by COGSA. *See, e.g., William H. Muller & Co. v. Swedish Amer. Line Ltd.,* 224 F.2d 806 (2d Cir.), *cert. denied,* 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955); *Cerro De Pasco Copper Corp. v. Knut Knutsen, O.A.S.,* 187 F.2d 990 (2d Cir.1951).

be on guard for artifices in which the ancient suspicion of arbitration might reappear."). Finally, unlike a foreign forum selection clause, an agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute. *S/S Clymenia,* 318 F.Supp. at 1390; *MS Galini,* 323 F.Supp. at 83.

For the foregoing reasons, the order of the district court is ***Affirmed.***