NUOVO PIGNONE SPA

v.

**M/V STORMAN ASIA, her engines, tackle, apparel, etc. in rem et al.**

**Civil Action No. 00–0534.**

United States District Court, E.D. Louisiana.

Sept. 28, 2001.

John Francis Fay, Jr., Francis J. Barry, Jr., Deutsch, Kerrigan & Stiles, New Orleans, LA, for Nuovo Pignone SPA.

Janet Wessler Marshall, Stephen E. Mattesky, Terriberry, Carroll & Yancey, New Oleans, LA, for Navimar S A, Key Largo Transportes Maritimo LDA.

Derek Anthony Walker, Daniel Alfred Tadros, Ivan Mauricio Rodriguez, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, Houston, TX, Jackson W. Moore, James J. Sentner, Jr., Gardere Wynne & Sewell LLP, Houston, TX, for Fagioli Spa.

Nathan Allan Wesely, Royston, Tayzor, Vickery & Williams, Houston, TX, for Etarco U S A Corp.

## ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED THAT** Fagioli SPA's "Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process" is **DENIED.** (Document # 26.)

### I. BACKGROUND

Nuovo Pignone SPA, a corporation with its principal office in Massa, Italy, entered into a contract with Fagioli SPA to ship a tubular reactor and related components from Marina de Carrara, Italy, to New Orleans, Louisiana, aboard the M/V STORMAN ASIA. According to the contract, Fagioli's service ended with the arrival in the Port of New Orleans with CFR Un–Lashed/Secured/Damaged delivery. After the vessel arrived in the Port of New Orleans, BASF, Nuovo Pignone's final client in Geismar, Louisiana, took responsibility for unloading and arranging to transfer the reactor to Etarco USA Corporation's barge CBC 1267 for transport to Geismar. Fagioli was required under the contract to provide the hoisting means to accomplish the unloading.[1] The M/V STORMAN ASIA was equipped with derricks that allegedly had the capacity to unload the reactor.

---

1. *See* Article 17 of the contract.

On February 13, 2000, the vessel's crew, under the direction of the Master of the vessel, began offloading the reactor to the barge, which was double banked on the vessel's port side. During discharge, the runner wire of the derrick at the trailing end of the reactor parted, and the reactor fell to the decks of both the M/V STORMAN ASIA and the barge. After several days, the vessel contracted two floating cranes to pick up the reactor and transfer it to the barge. The transfer was completed on February 20, 2000, and the barge and the push boat "Aaron Vizier" proceeded to Geismar.

Nuovo Pignone, the owner of the cargo, filed a complaint and amended complaint under Rule 9(h) of the Federal Rules of Civil Procedure against the M/V STORMAN ASIA, *in rem;* Key Largo Transportes Maritimo Lda. and Navimar S.A., the owners of the vessel, *in personam;* and Fagioli, *in personam.* Nuovo Pignone alleges that the reactor was damaged due to the negligence, fault, breach of duty, or breach of contract or warranty of the defendants and the unseaworthiness of the vessel. Nuovo Pignone specifically alleges the failure of the "hoisting means which are part of the equipment of the ship." Nuovo Pignone filed a maritime lien and an attachment against the vessel. Etarco intervened to recover additional expenses incurred as a result of the accident and alleged a breach of contract claim against Nuovo Pignone and tort claims against the defendants. Fagioli filed a cross-claim against its codefendants.

## II. DISCUSSION

### A. Insufficiency of service of process

Fagioli argues that service of the complaint by Federal Express to Fagioli's "Company President" in Milan, Italy, is improper under Rule 4 of the Federal Rules of Civil Procedure and Rule 10(a) of the Hague Convention. Fagioli contends that the service of legal documents in Italy must be through the central authority, the registry of the court of appeal in Rome, which in turn will forward the documents in accord with that country's laws.

Service on an individual may be effected outside of the United States "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention." [2] Fed.Rule Civ.P. 4(f)(1). "The signatories to the Hague Convention desired to create appropriate means to ensure that judicial and extrajudicial documents would be brought to the notice of the addressee in sufficient time." *See* Preamble to the Convention on Service Abroad. Article 5 provides that a central authority "shall itself serve the document or shall arrange to have it served by an appropriate agency." Article 10(a) grants "the freedom to send judicial documents, by postal channels, directly to persons abroad," provided the State of destination does not object.

■ The Circuits are split on whether article 10(a) permits service of process via mail based of the use of the term "send" in article 10(a). *See Lafarge Corp. v. M/V MACEDONIA HELLAS,* 2000 WL 687708 at *10 (E.D.La. May 24, 2000) (No. 99–2648). The Fifth Circuit has yet to rule on the issue, and district courts within the Fifth Circuit disagree. The court agrees with the reasoning of those courts that conclude that the Hague Convention permits service of process by mail pursuant to article 10(a). *See id.* This conclusion is in harmony with the Convention's overall purpose of creating service abroad. More-

---

**2.** The Hague Convention is in force in Italy. *See Societe Nationale Industrielle Aerospatiale v. U.S. District Court for Southern District of* *Iowa,* 482 U.S. 522, 107 S.Ct. 2542, 2546, 96 L.Ed.2d 461 (1987).

over, the parties do not dispute that Fagioli received the summons and complaint, and there is no evidence that Italy has expressly prohibited service by mail. Accordingly, the Rule 12(b)(4) motion to dismiss for failure to effect proper service is denied.

### B.   Lack of personal jurisdiction

Fagioli filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. "In a federal question case in federal court, the relevant constitutional provision is the due process clause of the fifth amendment." *Burstein v. State Bar of California,* 693 F.2d 511, 514 (5th Cir. 1982). The inquiry is "specific to each case and not susceptible of easy determination." *Id.* "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985).

A court may exercise jurisdiction over a nonresident defendant when that defendant has established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).

Minimum contacts may be established under specific jurisdiction or general jurisdiction. Defendants can be subject to general *in personam* jurisdiction if they have "continuous and systematic" contacts with the forum state. *Id.* at 1872 n. 9. The forum state need not have a direct interest in the action in order to exercise general jurisdiction. *See Felch v. Transportes Lar–Mex SA De CV,* 92 F.3d 320, 326 (5th Cir.1996).

There is no allegation that Fagioli had "continuous and systematic" con-

tacts with the forum state; therefore, the court must determine whether Nuovo Pignone has established specific jurisdiction by examining Fagioli's contacts with Louisiana. When an action arises out of or is related to the defendants contacts with the forum, jurisdiction is commonly referred to as "specific jurisdiction." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984).

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 105 S.Ct. at 2182 (citations and footnotes omitted). Particular emphasis is placed on whether the defendant invoked the benefits and protection of the laws of the forum state and reasonably expected that its actions would result in having to litigate so far from home. *See Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In order to establish specific personal jurisdiction, there must be a showing that the non-resident defendant purposefully directed its activities at forum residents or purposefully availed itself of the privilege of conducting activities within the forum state, and that the plaintiff's cause of action arise out of or results from the defendant's forum-related contacts. *See Hanson,* 78 S.Ct. at 1239 (1958). Additionally, it must appear that the exercise of jurisdiction would comport with fair play and substantial justice. *See International Shoe Co. v. Washington,* 326

U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, [and] the plaintiff's interest in obtaining convenient and effective relief." *Burger King,* 105 S.Ct. at 2184 (internal quotation and citations omitted). "[W]hen a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* 105 S.Ct. at 2184–85. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *United States v. First National City Bank,* 379 U.S. 378, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965). It is therefore necessary to analyze whether the claim sued upon arises out of the defendant's forum-related activities, and whether the exercise of personal jurisdiction would be fair and reasonable under the circumstances of a particular case.

Fagioli's alleged contact with Louisiana is its negotiating and executing a contract in Italy with Nuovo Pignone to deliver cargo to the Port of New Orleans aboard the M/V STORMAN ASIA. The parties agreed that the M/V STORMAN ASIA, chosen by Fagioli, would be used for shipping, and that the loading would be done by Nuovo Pignone's "care and at [its] expense," and that the cargo would be unloaded by Nuovo Pignone's final client in New Orleans or Geismar. Nuovo Pignone argues that because the contract of carriage required that the vessel be strong, robust, stable, well-equipped and provided with everything necessary for the trip; have appropriate space and capacity for the reactor; be capable of entering the Port of New Orleans at any time of the year; be owned, chartered, or rented under coverage by P & I Club; be equipped with appropriate engines for navigation;

be equipped with appropriate devices for loading operations in connection with the weight of the reactor; and have its own shears, winches, and hoisting means for safe, autonomous hoisting operations and/or unloading in connections with the weight of the reactor; that the minimum contacts necessary to confer personal jurisdiction are present.

In *Mitsubishi Shoji Kaisha Ltd. v. MS GALINI,* 323 F.Supp. 79, 81 (S.D.Tex. 1971), the court held that the contacts of the charterer and the owner of the vessel, whose principal place of business was in Athens, Greece, with the State of Texas were sufficiently substantial to confer jurisdiction. The charterer had directed the vessel to pick up grain in Texas, and the business of the shipping company was to go where the charterer directed. *Id.* Therefore, the plaintiff's cause of action for cargo contamination was integrally connected with the contract between the charterer and the vessel which was to be performed in part in Texas. *Id.*

In *Chilean Nitrate Corp. v. M/V HANS LEONHARDT,* 810 F.Supp. 732, 737 (E.D.La.1992), the court held that there was *in personam* jurisdiction over the vessel owner/shipping company, a Cyprus corporation with its agent for service in Germany, because the cause of action, alleging that sodium nitrate unloaded in New Orleans was contaminated while on board the vessel, arose in Louisiana. The court concluded that the shipping company had sufficient minimum contact with Louisiana to satisfy the first prong of the due process inquiry. *Id.* In deciding that the fairness prong had also been satisfied, the court found that the nature and extent of the activity in question supported jurisdiction, the State of Louisiana had an interest in providing redress for injury to property in Louisiana, and a suit in Louisiana was no

less convenient than a suit in Texas or Arkansas. *Id.* at 737–38.

 The court determines that Nuovo Pignone has established that the cause of action arises out of the defendant's forum-related contacts. Like *Mitsubishi* and *Chilean,* the contract between Fagioli and Nuovo Pignone evidences a contract to supply a vessel equipped to safely deliver and provide equipment for the safe discharge of the reactor in Louisiana. Accordingly, Fagioli had sufficient forum-related contact with Louisiana to satisfy the first prong of the due process inquiry.

The fairness prong is also satisfied because Louisiana has an interest in redressing the injury based on the failure of the equipment in unloading the reactor in New Orleans. Further, Fagioli has not carried its burden of proving that the exercise of jurisdiction in Louisiana would be unreasonable and, thus, would not comport with fair play and substantial justice.

## III. CONCLUSION

The Rule 12(b)(4) motion to dismiss for failure to effect proper service is denied. Service of process by mail under the circumstances of this case is permitted under the Hague Convention. Further, the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied. Fagioli directed its activities toward the State of Louisiana, and the exercise of personal jurisdiction is fair and reasonable.